D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ORTEGA AGHOGHOUBIA,

                        Plaintiff,

            -against-

BRANDON NOEL (Shield No. 1967),
JONATHAN MURDOCCO (Shield No. 279),
and JOHN and/or JANE DOES 1, 2, 3, etc.

                        Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

**MEMORANDUM & ORDER**

**17-CV-1927 (NGG) (SJB)**

Plaintiff Ortega Aghoghoubia brings this action under 42 U.S.C. § 1983, the New York

State Constitution, and certain state tort laws against Defendants New York State Department of

Corrections and Community Supervision Parole Officers Brandon Noel (Shield No. 1967) and

Jonathan Murdocco (Shield No. 279), as well as an unspecified number of unknown parole

officers (the "Doe Defendants") (Compl. (Dkt. 1).)

Before the court is Defendants Noel and Murdocco's motion to dismiss Plaintiff's

complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Mot. to Dismiss

(Dkt. 19); see Mem. in Supp. of Mot. to Dismiss ("Mem.") (Dkt. 20).) For the reasons that

follow, Defendants' motion is GRANTED in part and DENIED in part.

## I.     BACKGROUND

### A.     Facts

The following facts are drawn from Plaintiff's complaint and are assumed to be true for

purposes of the motion to dismiss.

Plaintiff alleges that on April 4, 2016 at approximately 4:00 P.M., he arrived at the

Brooklyn Area Office of the New York State Department of Corrections and Community

Supervision ("DOCCS") ("Brooklyn Parole Office") to meet with his parole officer. (Compl. ¶¶ 14-15.) Plaintiff was wearing a winter hat. (Id. ¶¶ 16-17.) No one in the office informed Plaintiff that it was against the office's policy to wear a hat, and there were no signs in the office indicating that hats were prohibited. (Id. ¶¶ 19-20.)

At approximately 5:00 P.M., Plaintiff was speaking with the person sitting next to him in the waiting room when a man that Plaintiff had never seen before walked past him. (Id. ¶¶ 20, 23.) This man, whom Plaintiff later learned to be Defendant Noel, did not identify himself, was dressed in street clothes, and was not wearing any credentials indicating that he was a parole officer or DOCCS employee. (Id. ¶¶ 21, 22-23.) As Defendant Noel walked past Plaintiff, he said something, but Plaintiff did not hear what he said and had no reason to believe that Defendant Noel was speaking to him. (Id. ¶ 24.) Plaintiff continued speaking with his neighbor. (Id. ¶ 25.) At this point, Defendant Noel approached Plaintiff and ordered him to remove his hat. (Id. ¶ 26.) Plaintiff complied with this order. (Id. ¶ 27.) Defendant Noel then yelled at Plaintiff, "What did you say?" to which Plaintiff responded, "I didn't say anything." (Id. ¶¶ 28-29.) Defendant Noel then yelled, "I'll be back," and walked into a private room. (Id. ¶ 30.) He returned to the waiting area with approximately six other people in street clothes, whom Plaintiff believes were additional parole officers, including Defendant Murdocco. (Id. ¶ 31.) Defendant Noel approached Plaintiff, grabbed him by his arms, pushed him from where he was sitting to the edge of the bench, and eventually wrestled Plaintiff to his feet and threw him against a nearby wall. (Id. ¶¶ 32-33.) Defendant Noel then held Plaintiff against the wall while Defendant Murdocco took out his baton and hit Plaintiff approximately two times in the leg. (Id. ¶ 34.) Defendants eventually tackled Plaintiff to the ground and handcuffed him before taking him to a

private area and placing him in a holding cell. (Id. ¶¶ 35-36.) Plaintiff was subsequently charged with violating the terms of his parole for allegedly assaulting a parole officer. (Id. ¶ 37.)

Defendant Noel then submitted an "unusual incident report," in which he admitted that Plaintiff had complied with an order to remove his hat, but falsely alleged that Plaintiff did not comply with subsequent orders, that Plaintiff flailed his arms and stiffened his body when Defendants approached him, and that Plaintiff attempted to grapple with Defendant Noel. (Id. ¶¶ 38-39.) Defendant Murdocco also submitted an "unusual incident report" that included false information about the incident, including the false allegation that Plaintiff "physically attack[ed]" Defendant Noel. (Id. ¶ 40.) However, a surveillance video of the incident shows that after Defendant Noel approached Plaintiff, not enough time transpired for Plaintiff to comply with an order before Defendant Noel grabbed him, and that Plaintiff did not flail his arms or attempt to grapple with or physically attack Defendant Noel. (Id. ¶¶ 41-42.)

Approximately one hour after the incident, Plaintiff experienced pain in the area where he was hit with the baton. (Id. ¶¶ 43-44.) Plaintiff complained about this pain to several parole officers and was eventually taken by ambulance to New York Methodist Hospital, where he was handcuffed to a hospital bed and surrounded by parole officers, including Defendant Noel. (Id. ¶¶ 45-47.) Plaintiff was examined by a doctor and given Motrin and an ice pack for the area where Defendant Murdocco struck him with the baton. (Id. ¶ 48.) Plaintiff was then taken to the Manhattan Detention Complex ("MDC") where he was held for approximately one week, during which time he made several sick call requests related to the pain in his leg. (Id. ¶¶ 49-52.) Plaintiff was subsequently transferred to Rikers Island. (Id. ¶ 53.)

On April 14, 2016, a 'preliminary hearing officer" held a preliminary hearing in connection with Plaintiff's alleged parole violation. (Id. ¶¶ 54, 58.) Plaintiff did not testify at

3

the hearing, but Defendant Noel testified falsely that Plaintiff flailed his arms when Defendant Noel grabbed his wrists and that Plaintiff stood up and pushed Defendant Noel. (Id. ¶¶ 55-57.) The preliminary hearing officer found probable cause for the parole violation and set a final hearing date. (Id. ¶ 58.)

At Plaintiff's final hearing, his counsel showed the surveillance video of the April 4, 2016 incident, and Defendants Noel and Murdocco testified. (Id. ¶ 59.) Defendant Noel acknowledged during the hearing that the "no hats" policy had not been posted in the parole office. (Id. ¶ 60.) Following the hearing, the Administrative Law Judge vacated Plaintiff's warrant, noting that the Plaintiff had committed "[N]o parole violation in any important respect." (Id. ¶ 61 (alteration in Complaint).) Plaintiff was released from DOCCS custody on or about June 29, 2016, after approximately three months of incarceration. (Id. ¶¶ 62-63.)

Plaintiff alleges that he missed approximately three months of work as a result of his incarceration, that he was charged for the ambulance ride to the hospital and for the medical treatment he received at the hospital, and that he sustained serious physical injuries, as well as emotional and psychological pain, embarrassment, humiliation, harm to his reputation, and deprivation of his constitutional rights. (Id. ¶¶ 64-67.)

### B. Procedural History

Plaintiff commenced this action on April 4, 2017. (Compl.) He asserts seven causes of action. First, he alleges that Defendants deprived him of his Fourth and Fourteenth Amendment rights, including the right to be free from unreasonable seizure, and that Defendants failed to intervene to prevent these alleged infringements ("Claim One"). (Id. ¶¶ 68-70.) Second, Plaintiff alleges that Defendants violated parallel rights guaranteed by the New York State Constitution, including the right to be free from the use of excessive force ("Claim Two"). (Id.

4

¶¶ 73-75.) Finally, Plaintiff asserts five state tort causes of action: assault and battery ("Claim Three"), false imprisonment ("Claim Four"), intentional infliction of emotional distress ("Claim Five"), negligence ("Claim Six"), and negligent infliction of emotional distress ("Claim Seven"). (Id. ¶¶ 76-92.)

Defendants now move for the dismissal of all claims except for the Fourth Amendment excessive force claim.[1] (Mem.) First, they state that Plaintiff's state law tort claims and claims under the New York State Constitution are barred pursuant to § 24 of the New York Correction Law. (Id. at 5.) Second, they state that Plaintiff's claims stemming from his arrest are barred by the finding of probable cause at Plaintiff's preliminary hearing during the parole revocation process. (Id. at 6-7.) Finally, they contend that Defendants are, in any event, entitled to qualified immunity. (Id. at 8.)

## II. LEGAL STANDARDS

A Rule 12(b)(6) motion tests the legal sufficiency of a plaintiff's complaint. Patane v. Clark, 508 F.3d 106, 112-13 (2d Cir. 2007). To survive a Rule 12(b)(6) motion, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

When considering a motion to dismiss for failure to state a claim, the court must accept as true all allegations of fact in the complaint and draw all reasonable inferences in favor of the plaintiff. L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 429 (2d Cir. 2011). "In

---

[1] Defendants also fail to address Plaintiff's § 1983 claim against Defendants based on their failure to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence (see Compl. ¶ 70).

determining the adequacy of the complaint, the court may consider any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as documents upon which the complaint relies and which are integral to the complaint." Subaru Distribs. Corp. v. Subaru of Am., Inc., 425 F.3d 119, 122 (2d Cir. 2005).

A district court should also dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) when it lacks the statutory or constitutional authority to adjudicate it. See Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011) (citation omitted). The court should take all facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor, but the plaintiff has the burden of proving by a preponderance of the evidence that jurisdiction exists. Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (citations omitted).

## III.  DISCUSSION

### A.  Plaintiff's State-Law Claims

Defendants seek dismissal of Plaintiff's claims under the New York State Constitution and state law on the grounds that New York Correction Law § 24 shields them from liability for state-law claims in both state and federal court. (Mem. at 5.) In relevant part, § 24 states:

> No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.

N.Y. Correct. Law § 24. It is thus "well settled that § 24 shields employees of a state correctional facility from being called upon to personally answer a state law claim for damages based on activities that fall within the scope of the statute." Ierardi v. Sisco, 119 F.3d 183, 186 (2d Cir. 1997). "Such immunity is available whether the action is pursued in a state court or,

under pendent jurisdiction, in a federal court." Id. at 187; see also Baker v. Coughlin, 77 F.3d 12, 15 (2d Cir. 1996) ("If a state would not recognize a plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction ... must . . . not allow that claim to be appended to a federal law claim in federal court." (citation omitted)).

Plaintiff does not dispute that Defendants are or were officials of DOCCS who were acting within the scope of their employment. (Pl. Opp'n (Dkt. 21) at 5-8.) Nevertheless, Plaintiff argues that Baker and Ierardi are no longer good law in the wake of the Supreme Court's decision in Haywood v. Drown, 556 U.S. 729 (2009), and urges this court to hold § 24 unconstitutional to the extent that it bars federal courts from exercising supplemental jurisdiction over state-law claims against DOCCS officials in their personal capacities. (Pl. Opp'n at 5-8.)

Defendants, however, rightly note that Plaintiff misapplies Haywood. (Defs. Reply in Supp. of Mot. ("Reply") (Dkt. 22) at 2.) In Haywood, the Supreme Court held that § 24 violated the Supremacy Clause to the extent that it precluded plaintiffs from maintaining a federal cause of action against DOCCS officials in state court. Id. at 740 ("[H]aving made the decision to create courts of general jurisdiction that regularly sit to entertain analogous suits, New York is not at liberty to shut the courthouse door to federal claims that it considers at odds with its local policy.") Haywood did not, however, prevent New York—through § 24—from depriving its state courts of jurisdiction over state-law claims against DOCCS officials. See Doe v. New York, No. 10-CV-1792 (RJD), 2013 WL 816197, at *2 (E.D.N.Y. Mar. 5, 2013) ("[O]f course, New York State is free to limit the jurisdiction of its own courts with respect to New York law without triggering the Supremacy Clause." (citing Haywood, 556 U.S. at 736)). And Haywood did not affect the Second Circuit's holding in Baker that federal courts cannot exercise pendent jurisdiction over state-law claims that a plaintiff could not bring in state court. Hassell v.

Fischer, 96 F. Supp. 3d 370, 385 n.14 (S.D.N.Y. 2015) (noting that Baker is unaffected by Haywood); accord May v. Donneli, No. 06-CV-437, 2009 WL 3049613, at *5 (N.D.N.Y. Sept. 18, 2009) ("A claim brought pursuant to a state law does not implicate the Supremacy Clause, and therefore, the Haywood decision does not affect the question of whether this Court has proper jurisdiction to hear this pendent state law claim."). Indeed, the argument advanced by Plaintiff has been soundly rejected by courts in this circuit. See, e.g., Lyons v. Davis, No. 17-CV-4504 (RA), 2018 WL 4759742, at *5 (S.D.N.Y. Sept. 30, 2018) (dismissing state-law claims against DOCCS officials for lack of subject-matter jurisdiction by virtue of § 24); Doe, 2013 WL 816197, at *2 (same); Joy v. New York, No. 09-CV-841, 2010 WL 3909694, at *4 (N.D.N.Y. Sept. 30, 2010) (same and collecting cases).

Accordingly, this court declines to exercise pendent jurisdiction over Plaintiff's state-law claims and grants Defendants' motion to dismiss Plaintiff's claims under state law.

**B.      Plaintiff's § 1983 Claim**

In order to state a claim under § 1983, a plaintiff must allege that he has been (1) deprived of a right, privilege or immunity secured by the Constitution or laws of the United States, and that (2) this deprivation was done under color of law. § 1983; accord Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (citing Parratt v. Taylor, 451 U.S. 527, 535 (1981)). Here, Plaintiff claims that Defendants, acting under color of law, deprived him of constitutionally protected rights under the Fourth and Fourteenth Amendments to the United States Constitution, "including, but not limited to:" (1) the right to be free from unreasonable search and seizure; (2) the right to be free from false arrest; (3) the right to be free from false imprisonment; (4) the right to be free from the lodging of false criminal charges against him by government officials; and (5) the right to be free from deprivation of liberty without due process

8

of law.  Plaintiff also contends that Defendants breached their affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.  (Id. ¶ 70.)

### 1.   False Arrest and False Imprisonment Claims

Claims for false arrest or false imprisonment[2] "brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest . . . under state law." Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (citation and internal quotation marks omitted); see Boyd v. City of New York, 336 F.3d 72, 75 (2d Cir. 2003) ("The elements of false arrest . . . under § 1983 are 'substantially the same' as the elements under New York law.  Therefore, the analysis of the state and the federal claims is identical." (citation omitted)).  To prevail on either claim, the plaintiff must show (1) that the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) that the plaintiff did not consent to the confinement; and (4) that the confinement was not otherwise privileged. Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003).  "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)); see also Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").  "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that

---

[2] New York draws no distinction between false arrest and false imprisonment. See, e.g., Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment.") (citing *Jacques v. Sears, Roebuck & Co.*, 285 N.E.2d 871, 877 (N.Y. 1972)).

are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested

has committed or is committing a crime." Gonzalez, 728 F.3d at 155 (emphasis omitted)

(quoting Weyant, 101 F.3d at 852). "The inquiry is limited to 'whether the facts known by the

arresting officer at the time of the arrest objectively provided probable cause to arrest.'" Id.

(quoting Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir. 2006) (Sotomayor, J.)).

Plaintiff asserts that Defendants fabricated a parole violation and arrested him knowing

that they lacked probable cause to do so. Specifically, Plaintiff contends that there was no

probable cause for his arrest because he did not engage in any unlawful conduct while waiting to

meet with his parole officer, that he complied with an order to remove his hat, and that he did not

assault a parole officer. (Compl. ¶¶ 15-42.) Plaintiff further alleges that a surveillance video of

the incident supports his account, including that he "did not flail his arms or attempt to grapple

with, let alone physically attack, Defendant Noel." (Id. ¶ 42.) Finally, Plaintiff asserts that this

video was not shown to the preliminary hearing officer, who determined that there was probable

cause for his arrest, but that it was shown at his final revocation hearing, at which point the

Administrative Law Judge vacated Plaintiff's warrant, noting "[n]o parole violation in any

important respect." (Id. ¶¶ 59, 61.)

As Defendants note, the fact that the preliminary hearing officer found probable cause for

Plaintiff's arrest would ordinarily be "entitled to weight" in evaluating whether Defendants were

unreasonable in their belief that there was probable cause for his arrest. (Reply at 5.) See Bostic

v. Harder, No. 06-CV-540, 2009 WL 3165546, at *6 (N.D.N.Y. Sept. 25, 2009) (on summary

judgment, finding probable cause for arrest because, among other reasons, plaintiff was

collaterally estopped from relitigating probable cause determination after preliminary parole

revocation hearing during which plaintiff had full and fair opportunity to litigate the issue

(citing <u>University of Tennessee v. Elliot</u>, 478 U.S. 788, 799 (1986)); <u>see also</u> <u>Savino</u>, 331 F.3d

at 72 ("[I]ndictment by a grand jury creates a presumption of probable cause."). Here, however,

contrary to Defendants' contention that Plaintiff made only "the bare allegation that a Defendant

may have testified falsely," (Mem. at 5), Plaintiff's particularized allegations give rise to a

plausible inference that the preliminary hearing officer's finding of probable cause was based on

false information provided by Defendant Noel.[3] (Compl. ¶¶ 55-56.)

Courts have held that a plaintiff can overcome the presumption of probable cause created

by an indictment by a grand jury by "plainly alleg[ing] that the indictment by the grand jury was

grounded in the evidence fabricated by [the defendants]." <u>Smalls v. City of New York</u>, 181

F. Supp. 3d 178, 187 (E.D.N.Y. 2016); <u>see also</u> <u>Savino</u>, 331 F.3d at 72 (presumption of probable

cause is rebuttable "by evidence that the indictment was procured by fraud, perjury, the

suppression of evidence or other police conduct undertaken in bad faith" (internal quotation

marks and citation omitted)). In <u>Smalls</u>, that burden was satisfied by the plaintiff's claims that

although he had not been engaged in any illegal behavior, the defendants made false allegations

against him and fabricated grand jury testimony that plaintiff had been seen engaging in illegal

activity. <u>Smalls</u>, 181 F. Supp. 3d at 187-89. These allegations mirror those made by Plaintiff in

his complaint. (<u>See</u> Compl. ¶¶ 14-56.) If "bald assertions of perjury and fraud" were enough to

overcome the presumption of probable cause created by a grand jury indictment on a motion to

dismiss in <u>Smalls</u>, 181 F. Supp. 3d at 187, Plaintiff's nonconclusory allegations that the

---

[3] It is not clear to the court whether the "unusual incident reports" allegedly falsified by Defendants Noel and Murdocco were submitted to the preliminary hearing officer. Regardless, Plaintiff has plausibly alleged that the finding of probable cause was predicated on Defendant Noel's false testimony to the effect that "Plaintiff flailed his arms when Defendant Noel grabbed his wrists and that Plaintiff stood up and pushed Defendant Noel . . . [n]one of [which] was true." (<u>Id.</u> ¶¶ 55-56.)

Defendants lied suffice in this case to overcome any presumption created by the preliminary hearing officer's finding of probable cause.

The court is satisfied that Plaintiff has plausibly alleged that he was arrested without probable cause and accordingly denies Defendants' motion to dismiss Plaintiff's § 1983 claim based on false arrest and false imprisonment.

> 2.    <u>Plaintiff's § 1983 Claim Based on the Lodging of False Criminal Charges</u>

Plaintiff alleges that Defendants violated his rights under the Fourth and Fourteenth Amendments to the United States Constitution, including the "right to be free from the lodging of false criminal charges against him by government officials." (Compl. ¶ 69(d).) Defendants argue—without analysis but citing <u>Threat v. Russi</u>, 784 F. Supp. 65, 68-69 (W.D.N.Y. 1992) (citing <u>Freeman v. Rideout</u>, 808 F.2d 949, 952 (2d Cir. 1986), <u>cert. denied</u>, 485 U.S. 982 (1988))—that this claim "also fails." (Mem. at 7.) Presumably, these citations stand for the argument—advanced elsewhere in Defendants' brief in support of qualified immunity—that issuing a false report or testifying falsely is not, standing alone, a violation of constitutional rights. (Mem. at 9.) In response, Plaintiff points to <u>Taylor v. Sullivan</u>, 980 F. Supp. 697, 703-705 (S.D.N.Y. 1997), <u>aff'd</u>, 166 F.3d 1201 (2d Cir. 1998), in which the district court reviewed Second Circuit decisions and held that "an intentionally false report, directly causing the loss of liberty, can state a cause of action for deprivation of a parolee's constitutional rights." <u>Id.</u> (cited in Pl. Mem. at 11.) For the reasons set forth below, this court agrees with the reasoning in <u>Taylor</u> and concludes that Plaintiff may state a claim based on the lodging of false charges by Defendants to the extent that such charges directly deprived him of his liberty interest.

<u>Freeman v. Rideout</u> concerned an inmate's § 1983 action against a correctional officer who had instituted allegedly false charges against him resulting in a 30-day disciplinary

administrative segregation. The question before the Second Circuit was whether an inmate has a right to be free from false accusations that result in a disciplinary segregation. In holding that the plaintiff inmate did not suffer a constitutional violation for having been allegedly falsely accused, the court wrote:

> The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law. As is shown by the facts of this case, before Freeman could be placed in segregation, due process required that he be granted a hearing on whatever charges had been made against him.

808 F.2d at 951 (citations omitted). The court distinguished the facts before it in Freeman from those at issue in Morrison v. Lefevre, 592 F. Supp. 1052 (S.D.N.Y.1984), an earlier case in which a district court had held that "[h]owever minimal may be the process due to prisoners before segregation, that process is insufficient when it has been contaminated by the introduction through state action of false inculpatory evidence. The introduction of false evidence in itself violates the due process clause." Id. at 1073. The Second Circuit cautioned that the district court's "broad dictum . . . must be read in the factual context of the Morrison case. In Morrison, there was no hearing, and it was the mere filing of the charge itself that caused the plaintiff to be segregated." Freeman at 952. In contrast, the court explained, the plaintiff in Freeman "was granted a hearing, and was afforded the opportunity to rebut the charges against him, [so] the defendant's filing of unfounded charges did not give rise to a per se constitutional violation actionable under section 1983. Plaintiff suffered as a result of the finding of guilty by the prison disciplinary committee hearing, and not merely because of the filing of unfounded charges by the defendant." Id. at 953.

Following its decision in Freeman, the Second Circuit held in Franco v. Kelly, 854 F.2d 584, 585 (2d Cir. 1988), that "an allegation that state prison officials intentionally filed false

disciplinary charges against an inmate, in retaliation for the prisoner's exercise of a constitutional right, states a cause of action for damages under 42 U.S.C. § 1983." In distinguishing <u>Freeman</u>, the court explained that the "wide latitude in disciplining inmates as long as minimum constitutional procedures are employed . . . does not encompass conduct that infringes on an inmate's substantive constitutional rights." <u>Franco</u>, 854 F.2d at 590.

The Second Circuit subsequently discussed <u>Freeman</u> and <u>Franco</u> in <u>Grillo v. Coughlin</u>, 31 F.3d 53, 56-57 (2d Cir. 1994). The court explained that the holding of <u>Freeman</u> was that "a fair hearing, conforming to the due process standards of [<u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974)], would 'cure' a constitutional violation otherwise resulting from a false accusation." <u>Grillo</u>, 31 F.3d at 57. It cautioned, however, that <u>Freeman</u>'s holding was "narrow" and "applies only in the case of a complaint that alleges solely procedural, as opposed to substantive, due process violations." <u>Id.</u> Indeed, the court noted that it had held subsequent to <u>Freeman</u> "that an arbitrarily imposed confinement <u>can</u> constitute a substantive due process violation." <u>Grillo</u>, 31 F.3d at 57 (emphasis added) (citing <u>Lowrance v. Achtyl</u>, 20 F.3d 529 (2d Cir. 1994)).

In <u>Lowrance</u>, the court considered the case of an inmate who alleged constitutional violations stemming from his administrative confinement for two days. 20 F.3d at 531. The court identified the "constitutional interest at stake" as being a substantive one, namely, his state-law-created "liberty interest in remaining free from administrative confinement unless a correction officer has reasonable grounds to believe that he poses a threat to the order, safety or security of the correctional facility." <u>Id.</u> at 537 (citing N.Y. Comp. Code R. & Regs. Tit. 7, § 251-1.6(a)). The court noted:

> Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is incorrect or ill-advised. Moreover government action might be so arbitrary that it violates substantive due process regardless of the fairness of the procedures used.

14

Id. (internal quotation marks and citations omitted). The court ultimately found that the administrative confinement to which the plaintiff was subjected was not "arbitrary in the constitutional sense and therefore violative of substantive due process" because the plaintiff had "created a threat to the security of the prison by refusing a direct order in a mess hall setting." Id.

Examining these cases, the district court in Taylor concluded that the Second Circuit had actually articulated "a broader proposition that, while a prisoner's constitutional rights are not violated solely by being falsely accused of misconduct, false allegations that immediately interfere with substantive constitutional rights do violate a prisoner's constitutional rights." Taylor, 980 F. Supp. at 704. This is consistent with the Second Circuit's later decision in Zahrey v. Coffey, in which the court recognized, beyond the prison context, a constitutional right "not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity . . . provided that the deprivation of liberty of which [the plaintiff] complains can be shown to be the result of [the defendant's] fabrication of evidence." 221 F.3d 342, 349 (2d Cir. 2000).

The facts in Taylor were similar to those at issue here. In Taylor, the plaintiff's parole officer accused him of violating the terms of his parole. Relying on this parole officer's allegedly false "violation of release report," a senior parole officer issued a parole arrest warrant for the plaintiff. Taylor, 980 F. Supp. at 700, 705. The plaintiff was arrested and held in custody pursuant to this parole warrant beginning on December 6, 1988, but did not receive a probable cause hearing until December 15, 1988. Id. at 705. Consequently, although the plaintiff's confinement after the hearing was a result of both the allegedly falsified charges and the hearing officer's finding of probable cause, the plaintiff's first nine days of incarceration were "the direct

result of only [the parole officers'] actions." Id. Because the plaintiff had sufficiently alleged that the parole officer's intentionally false report had directly caused this loss of liberty, the court held that he had "stated a cause of action for deprivation of a parolee's constitutional rights." Id.

Other decisions in this circuit are consistent with Taylor. See, e.g., Jackson v. Ramirez, No. 15-CV-617 (GHW), 2016 WL 796854, at *7 (S.D.N.Y. Feb. 22, 2016), aff'd, 691 F. App'x 45 (2d Cir. 2017) (plaintiff could not make out a claim for denial of due process based on false accusations because he failed to allege that the allegedly false information in his DOCCS records deprived him of a liberty interest); Abreu v. City of New York, No. 04-cv-1721 (JBW), 2006 WL 401651, at *4 (E.D.N.Y. Feb. 22, 2006) ("Penalized are law enforcement officers who abuse their positions of power by substituting enmity for investigation-e.g., arresting and charging an individual without cause, or fabricating evidence against him." (citing Cook v. Sheldon, 41 F.3d 73 (2d Cir. 1994); Taylor, 980 F. Supp. 697)); Sloane v. Getz, No. 00-cv-4708 (DLC), 2001 WL 504879, at *3 (S.D.N.Y. May 10, 2001) ("[Plaintiff's] allegation that the three defendants 'fabricated a parole violation and arrested him knowing [they] lacked probable cause to do so' states a claim."); Sandson/Sanchez v. Harris, No. 96-CV-4675 (JG), 1998 WL 812564, at *5 (E.D.N.Y. June 29, 1998) (discussing Freeman, Franco, and Grillo and holding that plaintiff's allegation that parole officer knowingly filed a false report against him in retaliation for plaintiff's filing of a writ of habeas corpus "states a constitutional claim"); Jackson v. New York Dept. of Correctional Services, 994 F. Supp. 219, 223 n.3 (S.D.N.Y. 1998) (stating that "facts showing that [] a false disciplinary report actually deprived plaintiff of a liberty interest" can support a constitutional claim). Even the case cited by Defendants, Threat v. Russi, 784 F. Supp. 65 (W.D.N.Y. 1992), may not actually be inconsistent with Taylor: addressing only the deprivation of liberty involved in the revocation of the plaintiff's parole, and not any deprivation

that might have proceeded the revocation, the court in Threat specified that the plaintiff "'suffered as a result of the finding of [a parole violation by the parole board] and not merely because of the filing of unfounded charges by the defendant.'" Id. at 68 (alteration in original) (quoting Freeman, 808 F.2d at 952).

This court likewise agrees with the reasoning set forth in Taylor and holds that an intentionally false report that directly causes a loss of liberty can state a cause of action for deprivation of a parolee's constitutional rights. See Taylor, 980 F. Supp. at 705. Here, Plaintiff plausibly alleges that Defendants Noel and Murdocco fabricated a parole violation and arrested him knowing that they had no probable cause to do so, which directly resulted in a deprivation of his liberty. (See Compl. ¶¶ 36-54.) At this stage, Plaintiff's allegations are sufficient to state a claim for relief.

3.     Plaintiff's Due Process Claim

A procedural due process analysis proceeds with two questions. "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989) (citations omitted); see Shakur v. Selsky, 391 F.3d 106, 118 (2d Cir. 2004). Under Morrissey v. Brewer, 408 U.S. 471 (1972), parolees are entitled to certain "minimum" due process protections prior to the revocation of parole. See id. at 487-89. The first "minimum requirement[] of due process" is a preliminary hearing within a reasonable period of time, conducted by a neutral hearing officer, to determine whether reasonable ground exists to believe that the parolee violated the conditions of parole. See id. at 486. The parolee should be given notice of the charges against him and the time and place of the preliminary hearing, and should have the opportunity to appear and speak

on his own behalf, present evidence, and, on request, confront and cross-examine adverse

witnesses who the hearing officer has determined are not at risk of any harm. See id. at 486-87.

If probable cause is found to exist at the preliminary hearing, the parolee then has a right to a

hearing prior to a final decision on revocation by the state parole authority. Id. at 487. The

"minimum requirements of due process" at this final hearing include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole.

Id. at 488-89.

Defendants argue that Plaintiff "fails to allege how he was deprived of due process, since

admittedly he received a preliminary and final hearing, and fails to allege how these Defendants

were responsible for violations of due process." (Mem. at 7.) Indeed, Plaintiff does not allege

that either of his hearings lacked the procedural protections required by Morrissey. With respect

to his preliminary hearing, Plaintiff merely alleges that Defendant Noel testified falsely, Plaintiff

did not testify, and that the preliminary hearing officer found probable cause for the parole

violation. (Compl. ¶¶ 55-58.) Plaintiff does not allege that he was prevented from testifying,

cross-examining Defendant Noel, or presenting evidence on his behalf, or that his hearing failed

to conform to the requirements of Morrissey in any other way. See Jones, 45 F.3d at 679 ("[T]he

prisoner's due process rights are protected if he is granted a hearing on the charges and given an

opportunity to rebut them." (citing Freeman, 808 F.2d at 953)). Without more, Defendant Noel's

allegedly false testimony at his preliminary hearing does not support a claim for violation of

procedural due process. Plaintiff similarly does not allege any deficiencies in his final

revocation hearing, which resulted in his release from custody. Indeed, he alleges that it was

conducted by an Administrative Law Judge (Compl. ¶ 61), that he was represented (id. ¶ 59), that his counsel was permitted to present the surveillance video (id.), and that Defendant Noel was cross-examined (id. ¶ 60). The court accordingly finds that Plaintiff has failed to state a claim based on a violation of his right to procedural due process.

### 4.   Qualified Immunity

Defendants argue in the alternative that they are, "at the very least, entitled to qualified immunity as to Plaintiff's false imprisonment claims." (Mem. at 8.) "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (citing Russo v. City of Bridgeport, 479 F.3d 196, 211 (2d Cir. 2007)); see also Hunter v. Bryant, 502 U.S. 224, 229 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law.") (citation and internal quotation marks omitted). Defendants bear the burden of establishing qualified immunity. Vincent v. Yelich, 718 F.3d 157, 166 (2d Cir. 2013).

The Second Circuit has noted that, "[u]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted." Green v. Maraio, 722 F.2d 1013, 1018 (2d Cir. 1983); see Ramirez v. Hempstead Union Free Sch. Dist. Bd. of Educ., 33 F. Supp. 3d 158, 174 (E.D.N.Y. 2014). A defendant presenting a qualified immunity defense on a Rule 12(b)(6) motion "faces a formidable hurdle . . . and is usually not successful." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 191-92 (2d Cir. 2006). "The defense will succeed only where entitlement to qualified immunity can be

established 'based [solely] on facts appearing on the face of the complaint.'" Bryant v. Steele, 25 F. Supp. 3d 233, 246 (E.D.N.Y. 2014) (citing McKenna v. Wright, 386 F.3d 432, 436 (2d Cir. 2004)). For these reasons, a motion to dismiss "is a mismatch for immunity and almost always a bad ground of dismissal." Barnett v. Mount Vernon Police Dep't, 523 F. App'x 811, 813 (2d Cir. 2013).

Defendants assert that they are entitled to qualified immunity as to Plaintiff's false imprisonment claims[4] because: (1) Plaintiff has no right against arrest for a parole violation where that violation gives rise to a finding of probable cause at a preliminary hearing; (2) if he does have such a right, it is not clearly established; and (3) it was objectively reasonable for Defendants to believe their alleged conduct in taking Plaintiff into custody in these circumstances was lawful, particularly as such arrest and charges were sustained in a preliminary revocation hearing. (Mem. at 8-9.)

A police officer is entitled to qualified immunity shielding him from a claim for damages for false arrest if either (1) it was objectively reasonable for the officer to believe that probable cause to make the arrest existed, or (2) reasonably competent police officers could disagree as to whether there was probable cause for the arrest. See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991); see also Malley v. Briggs, 475 U.S. 335, 341 (1986). "In deciding whether an officer's conduct was objectively reasonable . . . , we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer." Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010) (internal quotation marks omitted).

---

[4] Defendants reserve their right to seek qualified immunity as to claims of excessive force at a later stage. (Mem. at 8 n.3.)

This court has already concluded that Plaintiff has stated a claim for false arrest. Plaintiff's allegations that Defendants fabricated a parole violation and arrested him knowing they lacked probable cause to do so, if proved, would plainly violate Plaintiff's clearly established right to be free from arrest in the absence of probable cause.[5] See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997) (right not to be arrested without probable cause is clearly established); Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir. 1994) (same); Golino, 950 F.2d at 870 (same). It would also be "objectively unreasonable for [Defendants] to believe [they] had probable cause to arrest [Plaintiff] if [they themselves] fabricated the ground for arrest" and "[n]o reasonably competent officers could disagree that a parole officer can not properly rely on evidence he knows to be false." Scotto v. Almenas, 143 F.3d 105, 113 (2d Cir. 1998) (dismissal inappropriate on the basis of qualified immunity where plaintiff alleged that defendant had fabricated a parole violation and arrested him knowing he lacked probable cause) (quotation marks and citations omitted and alteration adopted); see also Walker v. Mendoza, No. 00-CV-93 (JG), 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000) ("Because no reasonable officer could conclude that there is probable cause to arrest based on entirely fabricated charges, [the defendant] is not entitled to qualified immunity at this stage in the proceedings."). As in Scotto, this court thus concludes that Rule 12(b)(6) dismissal would be inappropriate here on the basis of qualified immunity.

Defendants also contend that they are entitled to qualified immunity because it was not clearly established that issuing a false report or testifying falsely violated Plaintiff's constitutional rights. (Mem. at 9.) In deciding whether a right was clearly established, a district

---

[5] Defendants attempt to incorporate the presumption of probable cause into the constitutional right and recharacterize Plaintiff's claim as being based on a new compound "right against arrest for a parole violation where that violation gives rise to a finding of probable cause at a preliminary hearing." This attempt fails.

court deciding a question of qualified immunity must appropriately define the constitutional right at issue. See Rose v. Goldman, No. 02-CV-5370 (NGG), 2011 WL 1130214, at *7 (E.D.N.Y. Mar. 24, 2011). "The Supreme Court has instructed courts encountering a qualified immunity defense to claimed violations of constitutional rights to consider carefully 'the level of generality at which the relevant "legal rule" is to be identified.'" Zahrey v. Coffey, 221 F.3d 342, 348 (2000) (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)). If the right is construed too generally, e.g., "the right to due process of law," qualified immunity would be meaningless; if the right is construed too narrowly, only specific acts that have been previously declared unconstitutional would entitle a plaintiff to sue. Id. The touchstone for the courts' analysis should be the "context" of the alleged violation: "a potentially recurring scenario that has similar legal and factual components." Arar v. Ashcroft, 585 F.3d 559, 572 (2d Cir. 2009).

After defining the constitutional right, the court faces two issues. One, "a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009) (internal citations omitted). And two, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. at 816. The court may decide either of these issues first. Id. at 822 (abrogating Saucier v. Katz, 533 U.S. 194 (2001)).

"In deciding whether a right was clearly established, we ask: (1) Was the law defined with reasonable clarity? (2) Had the Supreme Court or the Second Circuit affirmed the rule? and (3) Would a reasonable defendant have understood from the existing law that the conduct was unlawful?" Taravella v. Town of Wolcott, 599 F.3d 129, 140 (2d Cir. 2010) (quoting Young v. County of Fulton, 160 F.3d 899, 903 (2d Cir. 1998)). Like defining the constitutional right, the key to determining whether the right was clearly established is context. The question is not

whether "the very action in question has previously been held unlawful," but rather, "[whether] in light of the pre-existing law the unlawfulness [of the action is] apparent." Id. at 140 n. 5 (alterations added) (quoting Anderson, 483 U.S. at 640). Therefore, "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." Id. (quoting United States v. Lanier, 520 U.S. 259, 269 (1997)) (alterations adopted).

As explained above, Plaintiff plausibly alleges that Defendants violated his constitutional rights by arresting him on the basis of a fabricated parole violation. Appropriately abstracted to encompass "a potentially recurring factual scenario that has similar legal and factual components," Arar, 585 F.3d at 572, Plaintiff's claim can be construed as being predicated on the right not to be deprived of liberty as a result of fabricated charges by a government officer. See Zahrey, 221 F.3d at 349 (identifying right not to be deprived of liberty as a result of the fabrication of evidence by a government officer acting in an investigating capacity).

Having defined the appropriate constitutional right, we find that it was clearly established at the time of the alleged violation. See Id. at 355 ("It is firmly established that a constitutional right exists not to be deprived of liberty on the basis of false evidence fabricated by a government officer.") (citing Scotto, 143 F.3d at 113 (parole officer); Ricciuti, 124 F.3d at 130 (police officers); White v. Frank, 855 F.2d 956, 961 (2d Cir. 1988) (same)).

Furthermore, as noted above, it would be "objectively unreasonable" for Defendants to believe they were acting lawfully in arresting Plaintiff if they themselves fabricated the ground for arrest, and "[n]o reasonably competent officers could disagree that a parole officer can not properly rely on evidence he knows to be false." Scotto, 143 F.3d at 113 (quotation marks and citations omitted and alteration adopted). The court thus finds that Defendants are not at this

stage entitled to qualified immunity with respect to Plaintiff's claim for a deprivation of his constitutional rights based on the filing of false charges.

Finally, the court need not address Defendants' claim that it was not clearly established that "a parolee's due process rights were violated when he was afforded a preliminary hearing," (Mem. at 9), because the court has already determined that Plaintiff has failed to state a claim based on a violation of procedural due process.

## IV.  CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion to dismiss (Dkt. 19).  Plaintiff's state-law claims and § 1983 claim based on a deprivation of procedural due process are dismissed.  The remainder of his § 1983 claim may proceed to discovery.

SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      January _11_, 2019

NICHOLAS G. GARAUFIS
United States District Judge