UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ORTEGA AGHOGHOUBIA,

                Plaintiff,

    -against-

PAROLE OFFICER BRANDON NOEL, PAROLE OFFICER JONATHAN MURDOCCO, and PAROLE OFFICERS JOHN and/or JANE DOES 1, 2, 3, etc (S),

                Defendants.

**MEMORANDUM & ORDER**

**17-CV-1927 (NGG) (SJB)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Ortega Aghoghoubia brings this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Brandon Noel and Jonathan Murdocco, Parole Officers with the New York State Department of Corrections and Community Supervision. (*See* Compl. (Dkt. 1).) Now pending before the court is Defendants' motion for summary judgment on Plaintiff's false arrest, false imprisonment, and excessive force claims.[1] (*See* Mot. for Summ. J. (Dkt. 31).) For the reasons explained below, Defendants' motion is DENIED.

## I. BACKGROUND

### A. Facts

The court constructs the following statement of facts from the parties' Local Rule 56.1 Statements and the admissible evidence they submitted. Except where otherwise noted, the following facts are undisputed. Where the parties allege different facts, the

---

[1] Defendants did not seek summary judgment on Plaintiff's claims for failure to intervene and the lodging of false criminal charges. (*See* Mem. in Supp. of Mot. for Summ. J. ("Mem.") (Dkt. 32) at 20 (requesting summary judgment on Plaintiff's "false arrest and false imprisonment and excessive force" claims).)

1

court notes the dispute and credits the Plaintiff's version if it is supported by evidence in the record. All evidence is construed in the light most favorable to Plaintiff, as the non-moving party, with all "reasonable inferences" drawn in his favor. *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).[2]

On April 4, 2016, Plaintiff—who was on parole from a prior conviction—came to the Brooklyn Parole Office for an appointment with his parole officer.[3] (Defs. R. 56.1 Statement ("Defs. 56.1") (Dkt. 33) ¶¶ 1-2, 19.) While Plaintiff was sitting in the waiting area of the office, Defendant Noel walked by and noticed that Plaintiff was wearing a hat. (*Id.* ¶ 16.) Defendants assert that there is a Parole Office policy banning hats in the waiting area. (*See* Decl. of Brandon Noel (Dkt. 35) ¶¶ 6, 9.) However, they do not assert that this policy is posted in the waiting area, nor do they submit evidence showing Plaintiff knew of this rule. (*See generally* Defs. 56.1; *see also* Pl. R. 56.1 Statement ("Pl. 56.1") (Dkt. 39) ¶ 61.) Noel instructed Plaintiff to remove his hat. (Defs. 56.1 ¶ 20.) Defendants claim that Noel repeated the instruction multiple times before Plaintiff removed his hat, but Plaintiff testified he removed his hat the first time he heard the instruction.

---

[2] When quoting cases and unless otherwise noted, all citations and quotation marks are omitted and all alterations are adopted.

[3] Defendants' brief begins its statement of facts with a two-page tangent titled "Plaintiff's History of Violence, Anger Issues[,] [a]nd Defiance of Rules [a]nd Authority." (*See* Mem. at 3-5.) Notably, Defendants make no argument that their actions were motivated by their personal knowledge of this history. (*See* Decl. of Brandon Noel (Dkt. 35); Decl. of Jonathon Murdocco (Dkt. 36).) Of course, Plaintiff's past interactions with law-enforcement are entirely irrelevant to the question of whether Defendants violated Plaintiff's constitutional rights on April 4, 2016. The court does not appreciate Defendants' implication that Plaintiff is less protected (or that Defendants are less constrained) by the United States Constitution because of Plaintiff's past. The court imagines a similar reaction should Defendants attempt to admit irrelevant character evidence at trial.

(*See id.* ¶¶ 21-23; Tr. of July 30, 2018 Dep. of Ortega Aghoghoubia ("Pl. Dep.") (Dkt. 37-1) at 94:9-14.) It is undisputed that Plaintiff removed his hat. (Defs. 56.1 ¶ 23.) The Parties do dispute whether, after Plaintiff removed his hat, Noel directed Plainitff to stand up and step forward. Defendants claim Plaintiff ignored Noel's directive, but Plaintiff testified that Noel did not give any additional order before he left the waiting area. (*Id.* ¶¶ 24-26; Pl. Dep. at 98:7-9.) Noel then left through a door at the front of the waiting area. (Defs. 56.1 ¶ 27.)

Shortly thereafter, Noel returned to the waiting area, followed by several other parole officers. (*Id.* ¶ 29.) The parties agree that Noel approached Plaintiff and directed Plaintiff to stand up (*id.* ¶ 30), but Plaintiff asserts that it was impossible to comply with this directive, because Noel immediately grabbed Plaintiff's arms and pulled him to his feet (Pl. 56.1 ¶ 30; Pl. Dep. at 108:20-21; 116:10-13). The parties characterize the following moments quite differently. Defendants state that Plaintiff was resisting Noel, ignoring repeated commands from Noel, and pushing back against or wrestling Noel. (Defs. 56.1 ¶¶ 34-37.) Defendants also point to Plaintiff's testimony that he "tensed up" by "instinct," and that he "wasn't going to let [Noel] just throw [him] down." (*Id.* ¶¶ 38-39 (quoting Pl. Dep. at 122).) Plaintiff, however, claims that he did not resist Noel and was never given a chance to comply with Noel's directives. (Pl. 56.1 ¶¶ 38-39.) Additionally, Plaintiff points out that his testimony—when read in context and not in short and single-word excerpts—shows that he was not resisting Noel but was instead being held up against the wall by Noel and was afraid of incurring a serious injury if he was thrown to the ground. (*Id.*; Pl. Dep. at 122:8-9, 123:12-14.) During this interaction, Defendant Murdocco struck Plaintiff twice on the shin with a baton, causing Plaintiff to fall to the ground. (Defs. 56.1 ¶ 45.) At that point, Plaintiff was placed in handcuffs. (*Id.* ¶ 46.) Shortly after the incident, Plaintiff was taken to a hospital,

where his injuries were examined by a doctor and he was prescribed Motrin for his pain. (*Id.* ¶ 49.) Plaintiff continued to feel pain from the baton strikes for at least a week after the incident. (*Id.* ¶ 51; Pl. 56.1 ¶ 51.)

Plaintiff submits two videos of the incident as part of his opposition to Defendants' motion. The first video captures the incident from the front right corner of the waiting area (*see* Front Video (Dkt. 40-2)), and the second video shows the incident from the rear left corner (*see* Rear Video (Dkt. 40-3)). The videos do not have audio and neither video perfectly captures the entire incident. However, when viewed in tandem, the videos provide valuable context to the conflicting testimony.

The Rear Video shows Noel walking into the waiting area and proceeding directly toward Plaintiff. (Rear Video.) Noel is followed immediately by one other officer; four additional officers enter the waiting area as Noel arrives at where Plaintiff is sitting. (*Id.*) In Noel's last few steps, he begins to reach his arms out toward Plaintiff. (*Id.*) At this point, Plaintiff is obscured by a column in the waiting area (*id.*), but the Front Video shows what happens next.

The Front Video shows Plaintiff holding his hat in his hand and looking toward the ground. (Front Video.) This video does not show the door through which Noel enters, but Plaintiff looks in Noel's direction a few seconds after the Rear Video shows Noel entering. (*Id.*; Rear Video) When Noel arrives at Plaintiff, he immediately grabs for Plaintiff's arm. (Front Video.) Seconds later, holding on to Plaintiff's left arm with this left hand, Noel places his right hand on Plaintiffs side and back area and pushes Plaintiff into the man seated to his right. (*Id.*) That man (and the man to the right of him) eventually stand up and move out of the way, and Noel pushes Plaintiff down against the bench. (*Id.*) Noel then pulls Plaintiff off of the bench, and Noel and Plaintiff exit the frame. (*Id.*)

Viewing again the rear video, Noel pulls Plaintiff off of the bench and swings him around so Plaintiff's back is toward the front wall of the waiting area. (Rear Video.) Leaning forward like a football player driving a blocking sled, Noel forces Plaintiff back into the wall. (*Id.*) The other officers rush to join Noel, and Murdocco strikes Plaintiff twice with his Baton. (*Id.*) Plaintiff collapses, with officers landing on top of him, and the view of him is obstructed by officers as he is placed into handcuffs. (*Id.*) About thirty seconds later, Plaintiff is pulled up and Noel escorts Plaintiff through the door in the front of waiting area. (*Id.*)

Plaintiff was charged with parole violations as a result of the incident. (Defs. 56.1 ¶ 52.) A preliminary hearing for Plaintiff was held on April 14, 2016. (*Id.* ¶ 53.) Noel and Murdocco testified and Plaintiff did not. (*Id.*) The Hearing Officer considered one charged violation: that Plaintiff "threatened the safety and well-being of himself and others who were present in the waiting area when he physically resisted being placed into custody by a parole officer." (*Id.* ¶ 54.) Explicitly relying on the testimony of Noel and Murdocco, the hearing officer found probable cause for the violation and set a date for a final revocation hearing. (*Id.* ¶ 55; *see also* Tr. of Apr. 14, 2016 Preliminary Hearing ("Preliminary Hearing Tr.") (Dkt. 34.-3).) At the final revocation hearing, the Hearing Officer "found no violation of parole in any important respect" and vacated the warrant against Plaintiff. (*Id.* ¶ 57.)

### B. Procedural History

Plaintiff filed his complaint on April 4, 2017. (Compl.) On March 15, 2018, Defendants moved to dismiss all of Plaintiff's claims except for his excessive force claim. (*See* Mot. to Dismiss (Dkt. 19); Mem. in Support of Mot. to Dismiss (Dkt. 20).) On January 11, 2019, the court issued a memorandum and order granting the motion as to Plaintiff's state law and procedural due process claims, and denying the motion as to Plaintiff's other claims. *See Aghoghoubia v. Noel*, No. 17-CV-1927 (NGG), 2019 WL 181309,

5

at *5 (E.D.N.Y. Jan. 11, 2019). Defendants answered the complaint on January 25, 2019. (Answer (Dkt. 29).) On May 23, 2019, Defendants filed their fully briefed motion for summary judgment. (*See* Defs. Mot. for Summ. J.; Mem.; Mem. in Opp. to Mot. for Summ. J. ("Opp.") (Dkt. 38); Reply (Dkt. 41).)

## II. LEGAL STANDARD

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The movant may discharge its initial burden by demonstrating that the non-movant "has 'failed to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 255 F. Supp. 3d 443, 451 (S.D.N.Y. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (alteration adopted).

"To determine whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion.'" *Mikhaylov v. Y & B Trans. Co.*, No. 15-CV-7109 (DLI), 2019 WL 1492907, at *3 (E.D.N.Y. Mar. 31, 2019) (quoting *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir. 1995)). While the court must draw all inferences in favor of the non-movant, the non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995).

### III. DISCUSSION

#### A. False Arrest and False Imprisonment

Claims for false arrest or false imprisonment[4] "brought under § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are substantially the same as claims for false arrest . . . under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003); *see also Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003) ("The elements of false arrest . . . under § 1983 are 'substantially the same' as the elements under New York law. Therefore, the analysis of the state and the federal claims is identical."). To prevail, the plaintiff must show that "(1) the defendant intended to confine the plaintiff; (2) that the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003).

Here, Defendants primarily argue that Plaintiff's confinement was privileged because the Defendant officers had probable cause. (*See* Mem. at 11-16.) "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013); *see also Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). "In general, probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to

---

[4] New York draws no distinction between false arrest and false imprisonment. *See, e.g., Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 1991) ("In New York, the tort of false arrest is synonymous with that of false imprisonment.") (citing *Jacques v. Sears, Roebuck & Co.,* 30 N.Y.2d 466, 473 (1972)).

7

warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Gonzalez*, 728 F.3d at 155. "When a parolee is involved, the lower 'reasonable cause' standard is in place." *Felix v. New York State Dep't of Corr. & Cmty. Supervision*, No. 16-CV-7978 (CS), 2018 WL 3542859, at *7 (S.D.N.Y. July 23, 2018). "New York's parole regulations state that . . . [r]easonable cause exists when evidence or information which appears reliable discloses facts or circumstances that would convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that a releasee has committed the acts in question." *Alvarado v. City of New York*, 482 F. Supp. 2d 332, 337 (S.D.N.Y. 2007). Still, "[t]he inquiry is limited to whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Gonzalez*, 728 F.3d at 155.

### 1. Initial probable cause for failure to comply

The Hearing Officer at the preliminary revocation hearing found probable cause that Plaintiff violated his parole when he allegedly "physically resisted being placed into custody by a parole officer." (Defs. 56.1 ¶ 54.) However, Defendants cannot show that Noel had probable cause to arrest Plaintiff based on his purported resistance, without more. This is because "[u]nder New York law, an essential element of the offense of resisting arrest is that the arrest allegedly resisted was 'authorized.' To be 'authorized' . . ., an arrest must either have been made pursuant to a warrant or have been based on probable cause."[5] *Weyant v. Okst*, 101 F.3d 845, 855 (2d Cir. 1996); *see also Curry v. City of Syracuse*, 316 F.3d 324, 336 (2d Cir. 2003) ("There are . . . at least

---

[5] The court is not aware of any authority that makes an exception to this requirement for a parole officer arresting a parolee. Moreover, that Defendants dedicate a portion of their briefing to discussing Plaintiff's alleged failure to comply indicates that Defendants agree that there is no such exception.

8

two essential elements of a charge for resisting arrest under New York law: (1) the person charged must have intentionally attempted to prevent the arrest of himself or someone else, and (2) the arrest he attempted to prevent must itself have been supported by a warrant or by probable cause."). Therefore, in order to show that Noel had probable cause based on Plaintiff resisting arrest, Defendants must show Noel had probable cause to arrest Plaintiff in the first place.

To meet this requirement, Defendants assert that Noel had probable cause to arrest Plaintiff because Plaintiff refused to comply with Noel's order to stand. (*See* Reply at 5 ("Not complying with Defendant Noel's order . . . constituted a clear and unrebutted violation of the rules, a sufficient basis for probable cause to arrest.").) Plaintiff admits that Noel ordered him to stand when Noel returned to the waiting area[6] (Pl. 56.1 ¶ 30), but argues that it was impossible for him to comply because Noel immediately began using force against Plaintiff. (*See* Opp. at 10; Pl. 56.1 ¶¶ 30-31.) In response, Defendants claim that whether Plaintiff had time to comply with Noel's order is irrelevant and that any noncompliance is sufficient to create probable cause to arrest for failure to comply. (*See* Reply at 4 ("[Plaintiff's] reason for not complying is not relevant here, where the question is whether an officer has reasonable cause to believe that a parolee has committed a violation.").)

Defendant's assertion cannot bear the weight of its implications. Law enforcement officers may not manufacture noncompliance

---

[6] To the extent that Defendants claim that Noel had probable cause to arrest based on Plaintiff's failure to comply with Noel's earlier order to stand up and step forward, Plaintiff testified that Noel never gave that order. (*See* Defs. 56.1 ¶¶ 24-26; Pl. Dep. at 98:7-9.) This dispute of material fact prevents the court from concluding as a matter of law that probable cause to arrest existed based on Plaintiff's alleged failure to comply with that order.

by assigning impossible tasks. *See, e.g., Greene v. Shegan*, 123 F. Supp. 3d 88, 91 (D.D.C. 2015) ("[Plaintiff's] version that it was factually impossible to comply with [Defendant's] order . . . could negate probable cause for arresting [Plaintiff] for failure to comply."). Defendants surely would not argue that Noel would have probable cause to arrest Plaintiff if Plaintiff failed to comply with an order to slay the Lernaean Hydra,[7] nor could Defendants claim that probable cause would arise if Plaintiff defied an order to leap a tall building in a single bound.[8] Just so, Noel would not have probable cause to arrest Plaintiff for failing to comply with Noel's order to stand if the order was given contemporaneously with Noel grabbing Plaintiff's arms and pushing Plaintiff against the bench where Plaintiff was sitting. Because the conflicting testimony and the videos of the incident raise a material question as to whether Plaintiff's compliance with Noel's order was factually possible, the court cannot, on a motion for summary judgment, find that Noel had probable cause to arrest Plaintiff for failure to comply with his order to stand.

Because there is a genuine dispute of material fact as to whether Noel had probable cause to arrest Plaintiff for failure to comply, there is necessarily also a dispute as to whether Noel had probable cause to arrest Plaintiff for resisting arrest. *Curry*, 316 F.3d at 336.

### 2. The preliminary hearing

Defendants sole remaining argument relies on the Hearing Officer's finding of probable cause at the preliminary revocation hearing. As a threshold matter, it is not clear whether Defendants intend to argue that the Hearing Officer's finding of probable

---

[7] *See* Apollodorus, *The Library*, Vol. II, at 187-89 (Sir James George Frazier, Ed. 1921) (available at http://www.perseus.tufts.edu/hopper/text.jsp?doc=Apollod.+2.5.2&fromdoc=Perseus%3Atext%3A1999.01.0022) (last visited May 13, 2020).

[8] *See generally Adventures of Superman* (1952-58).

10

cause is binding on this court as a matter of issue preclusion. Defendants assert that Plaintiff's false arrest claim is "precluded" by the Hearing Officer's finding of probable cause and that Plaintiff "has no basis to relitigate" that finding. (*See* Mem. at 14, 16; Reply at 7.) However, because Defendants do not so much as cite the legal standard for issue preclusion in their papers, the court assumes they are not asserting it here.[9]

Instead, the court considers whether the Hearing Officer's finding of probable cause at the preliminary revocation hearing creates an unrebutted presumption of probable cause that dooms Plaintiff's false arrest and false imprisonment claims. When a § 1983 Plaintiff "has been indicted by a grand jury, New York law creates a presumption of probable cause that can only be overcome by evidence that the indictment was the product of fraud, perjury, the suppression of evidence by the police, or other police conduct undertaken in bad faith." *Simon v. City of New York*, No. 16-CV-1017 (NGG), 2020 WL 1323114, at *4 (E.D.N.Y. Mar. 19, 2020) (quoting *Bermudez v. City of New York*, 790 F.3d 368, 377 (2d Cir. 2015)). It is reasonable to consider whether a similar presumption would extend to probable cause determinations made at preliminary parole revocation hearings. *See, e.g., Aghoghoubia*, 2019 WL 181309, at *5 ("[T]he fact that the preliminary hearing officer found probable cause for Plaintiff's arrest would ordinarily

---

[9] The court notes, however, that Defendants would be unlikely to succeed on a theory of issue preclusion. Issue preclusion requires, in part, the Plaintiff having "a full and fair opportunity to litigate the issue" in the preliminary hearing. *Zapata v. HSBC Holdings PLC*, 414 F. Supp. 3d 342, 348 (E.D.N.Y. 2019). In determining whether a plaintiff had a "full and fair opportunity to litigate her claims, courts in New York consider," *inter alia,* "the availability of new evidence." *James v. Am. Airlines, Inc.*, 247 F. Supp. 3d 297, 302-03 (E.D.N.Y. 2017). Here, the availability of the video of the incident, which was not shown at the preliminary revocation hearing, would almost certainly compel the conclusion that the Hearing Officer's finding of probable cause would not have preclusive effect in this proceeding.

11

be entitled to weight."). However, the presumption of probable cause "is rebuttable, and may be overcome by evidence establishing that the police witnesses have not made a complete and full statement of facts[,] that they have misrepresented or falsified evidence[,] or otherwise acted in bad faith." *McClellan v. Smith*, 439 F.3d 137, 146 (2d Cir. 2006); *see also Smalls v. City of New York*, 181 F. Supp. 3d 178, 186-87 (E.D.N.Y. 2016) (same).

Noel testified at the preliminary hearing that, when he reentered the waiting area, he:

> went to [Plainitff] and I told [Plaintiff] why don't you stand up and put your hands behind your back. He said no. So when he said no I went to grab hold of his wrist and he started flailing and I grabbed his wrist. When I went to grab his wrist, [Plainitff] pulled away from me, I'm trying to pull him back to me. At one point he stands up and he pushed me. So then I – we're wrestling back and forth. I somehow pushed [Plainitff] into the wall of the seating area and a couple of other officers helped me get – put [Plaintiff] on the floor. Placed some handcuffs and went back to the back room. So that's what happened.

(Preliminary Hearing Tr. at 7:13-25.) Similarly, Murdocco testified:

> [A]t approximately 5:15 PM I was called into the waiting room by my coworker, [Noel]. At that time [Plaintiff] was demonstrating noncompliance. [Noel] asked me to come and assist him, at which time [Noel] directed the subject to stand up and put his hands behind his back. The subject verbally said he wasn't doing so and persisted to attack [Noel], physically pushing him.

(*Id.* 18:23-19:4.) Further, it is clear that the Hearing Officer relied on Defendants' testimony in finding probable cause to arrest: "When the Parole Officer came back . . . and told you to stand up

and put your hands behind your back, that's what you should have done, okay. . . . You can't go into the Parole Office . . . and cause a disturbance." (*Id.* at 30:12-21.)

At the very least, the videos of the incident raise serious questions about the veracity of Defendants' testimony. There is no indication in either video that Plaintiff, at any time, flailed his arms or pushed or attacked Noel. (*See* Front Video; Rear Video.) Further, the mere seconds that passed between Noel reentering the waiting area and him placing his hands on Plaintiff casts serious doubt on Defendants' testimony that Plaintiff verbally refused to comply with Noel's directive. (*See* Front Video; Rear Video.) The videos produced by Plaintiff constitute evidence that the Preliminary Hearing Officer's probable cause determination was predicated on false or misleading testimony from Noel and Murdocco. Therefore, Plaintiff is able to rebut any presumption of probable cause that arises from the preliminary revocation hearing.

Based on the above, Defendants have not shown a lack of a dispute of material fact on Plaintiff's false arrest and false imprisonment claims and therefore are not entitled to judgment as a matter of law at this time.

### B. Excessive Force

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Force is excessive "if it is objectively unreasonable 'in light of the facts and circumstances confronting [the officer], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham*, 490 U.S. at 397). When evaluating an excessive force claim, courts in this Circuit "consider the severity of the crime at issue, whether the suspect poses

13

an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Terebesi v. Torreso*, 764 F.3d 217, 231 (2d Cir. 2014). The reasonableness determination is an objective one that must be made with reference to the perspective of a reasonable officer at the scene; in other words, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Graham*, 490 U.S. at 396. At the same time, however, "in some circumstances, no use of force is reasonable because none is required." *Esperanza v. City of New York*, 325 F. Supp. 3d 288, 303 (E.D.N.Y. 2018).

Because the reasonableness inquiry is so fact intensive, "granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004); *see also Scott v. City of New York*, No. 16-CV-834 (NGG), 2020 WL 208915, at *8 (E.D.N.Y. Jan. 14, 2020); *Duryea v. Cty. of Livingston*, No. 06-CV-6436 (MAT), 2012 WL 162407, at *4 (W.D.N.Y. Jan. 19, 2012) (whether force used was reasonable "is a fact intensive inquiry, and is best left for a jury to decide"). "Nevertheless, summary judgment in an excessive force case is not precluded if the evidence, viewed in a light most favorable to the plaintiff, would support a directed verdict for the defendants." *Landy v. Irizzary*, 884 F. Supp. 788, 798 (S.D.N.Y. 1995).

The evidence here does not support a directed verdict for Defendants. According to Plaintiff's version of the facts, Noel grabbed Plaintiff, pushed Plaintiff down on the bench, and pulled Plaintiff off the bench and drove him into the wall without first giving Plaintiff a reasonable—or any—opportunity to comply with the directive to stand up. Moreover, Defendants have adduced no evidence showing that Plaintiff was a risk to his own safety or the safety of others at that time that Noel began to apply force to

14

Plaintiff. Video of the incident shows Plaintiff sitting quietly on a bench in the waiting area when Noel began to use force. Plaintiff was not, prior to Noel grabbing him, "an immediate threat to the safety of the officers or others, . . . actively resisting arrest[,] or attempting to evade arrest by flight." *Terebesi*, 764 F.3d at 231.[10] Next, again crediting Plaintiff's version of the incident, Noel held Plaintiff against the wall while Murdocco struck Plaintiff twice with his baton. As a result of the incident, Plaintiff visited the hospital and experienced ongoing pain for at least a week.

Defendants argue that Noel and Murdocco used only *de minimis* force and that Plaintiff likewise only suffered *de minimis* injury. (*See* Mem. at 16-18; Reply at 7-8.) They claim that "[a] *de minimis* use of force does not rise to the level of a constitutional violation." (Mem. at 16.) This misstates the law and misunderstands the Fourth Amendment excessive force inquiry. While true that "a *de minimis* use of force will rarely suffice to state a constitutional claim," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993), "rare" does not mean "never." The "Fourth Amendment excessive force analysis is a contextual one that . . . does not look solely to the magnitude of the force exerted but requires close examination of the totality of the circumstances in each particular case." *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 566 (E.D.N.Y. 2013). Indeed, sometimes "no use of force is reasonable because none is required." *Esperanza*, 325 F. Supp. 3d at 303.

The Second Circuit held that an excessive force claim may survive summary judgment based on "allegations that, during the course of an arrest, a police officer twisted [the plaintiff's] arm, 'yanked' her, and threw her up against a car, causing only bruising." *Maxwell*, 380 F.3d at 108 (citing *Robison v. Via,* 821 F.2d 913, 924-

---

[10] Defendants argue that Noel was "duty bound to bring Plaintiff into compliance" (Reply at 8), but this duty does not include needlessly escalating the situation by immediately using force without giving Plaintiff an opportunity to comply.

25 (2d Cir. 1987)). *Maxwell* itself reversed a district court's grant of summary judgment on an excessive force claim based on comparatively minor injuries. *Id.* at 110. There, the plaintiff alleged that the officer "violently and unnecessarily swung and jerked her around by the handcuffs while she was cuffed from behind" and that the officer "shoved her head first into his police car, causing her head to strike the metal partition between the front and back seats." *Id.* at 108. As a result, she suffered "immediate pain . . . [and] was taken to a hospital . . . where she was treated for pain in her lower back and left arm and for headache." *Id.* She later "suffered from headaches, dizziness, nausea, and lethargy . . . and was diagnosed with post-concussive syndrome." *Id.*

Here, Plaintiff was taken to the hospital to receive treatment for his injuries and continued to feel pain for at least a week after the incident. Based on controlling case law, Plaintiff's asserted injuries are substantial enough to preclude summary judgment.[11] *See Adedeji*, 935 F. Supp. 2d at 567 ("[A]s a general rule, the issue of whether excessive force was used is for the jury to decide, even though the amount of force used and the extent of injury asserted may be minimal"); *Felmine v. City of New York,* No. 09–CV–3768 (CBA), 2011 WL 4543268, at *19 (E.D.N.Y. Sept. 29, 2011) ("The law of this circuit . . . does not appear to place a demanding requirement on excessive force plaintiffs to demonstrate injury."). Therefore, Defendants have failed to show that they are

---

[11] Plaintiff's injuries distinguish this case from the court's prior decisions in *Scott*, where the court granted summary judgment on an excessive force claim where the plaintiff "did not suffer any physical injur[y]" except for temporary "displeasure to his neck," *Scott,* 2020 WL 208915, at *2, and *Greene v. City of New York*, where the court held that the "[d]efendants [were] entitled to summary judgment" on an excessive force claim for which there was not "even a *de minimis* assertion of injury or use of force," No. 15-CV-6436 (NGG) 2019 WL 3606739, at *12 (E.D.N.Y. Aug. 6, 2019).

entitled to judgment as a matter of law on Plaintiff's excessive force claim.

### C. Qualified Immunity

The court next addresses Defendants' final argument: that Noel and Murdocco are protected from liability by qualified immunity. "Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015); *see also Hunter v. Bryant*, 502 U.S. 224, 229 (1991) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law."). Defendants bear the burden of establishing qualified immunity. *Vincent v. Yelich*, 718 F.3d 157, 166 (2d Cir. 2013). Finally, when considering qualified immunity—like all determinations at the summary judgment stage—the court is "required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007). "In qualified immunity cases, this usually means adopting . . . the plaintiff's version of the facts." *Id.*

#### 1. False Arrest

The right to not be arrested without probable cause is clearly established, *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997), and so an officer will be shielded from damages for a false arrest claim only if "(1) it was objectively reasonable for the officer to believe that there was probable cause for the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause for the arrest." *Campbell v. City of New York*, No. 16-CV-7201 (NGG), 2019 WL 569768, at *9 (E.D.N.Y. Feb. 11, 2019); *see also Golino v. City of New Haven*,

950 F.2d 864, 870 (2d Cir. 1991). "In deciding whether an officer's conduct was objectively reasonable . . . , we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer."[12] *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010).

As the court noted in its prior opinion on this issue, it is "objectively unreasonable for Defendants to believe they had probable cause to arrest Plaintiff if they themselves fabricated the ground for arrest." *Aghoghoubia*, 2019 WL 181309, at *10 (citing *Scotto v. Almenas*, 143 F.3d 105, 113 (2d Cir. 1998)); *see also Walker v. Mendoza*, No. 00-CV-93 (JG), 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000) ("Because no reasonable officer could conclude that there is probable cause to arrest based on entirely fabricated charges, [Defendants] [are] not entitled to qualified immunity at this stage in the proceedings."). As explained above, there are questions of fact as to: (1) whether Noel actually ordered Plaintiff to stand up and step forward before Noel left the waiting area to seek assistance from other parole offices, and (2) whether it was factually possible for Plaintiff to comply with Noel's order to stand up and put his hands behind his back. No reasonable officer could conclude that probable cause to arrest arises from the failure to comply with an impossible order. Therefore, Defendants

---

[12] The court notes that Defendants' reliance on the finding of probable cause at the preliminary revocation hearing is misplaced in a qualified immunity analysis, where the question turns on what an officer knew at the time of the arrest. Neither Noel nor Murdocco knew at the time of arrest that the preliminary hearing officer would make a finding that they had probable cause to arrest. The Hearing Officer's finding of probable cause also does not show that "reasonably competent police officers could disagree as to whether there was probable cause" to arrest Plaintiff, *Campbell*, 2019 WL 569768, at *9, because the finding was based at least in part on Defendants' false testimony at the hearing.

are not entitled to qualified immunity on Plaintiff's false arrest claim.

### 2. Excessive Force

"Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). Though *Kisela* creates a high bar for showing that the law is clearly established for the purposes of denying qualified immunity for an excessive force claim, the bar is met here.

At the time of the incident in 2016, it was clearly established in the Second Circuit that it is "unreasonable under the Fourth Amendment for an officer to use substantial force against an arrestee suspected of a minor offense who" fails to comply with an order but "does not physically attack an officer, attempt to flee, or make any threatening gesture." *Cox v. Fischer*, 248 F. Supp. 3d 471, 482 (S.D.N.Y. 2017). In *Brown v. City of New York*, the Second Circuit held that it was unreasonable for officers to bring a woman to the ground and deploy pepper spray on her when she refused to comply with an order to place her hands behind her back but did not otherwise resist arrest. 798 F.3d 94, 101-02 (2d Cir. 2015). Similarly, the Second Circuit found in *O'Hara v. City of New York* that it was unreasonable for an officer, "in effectuating [plaintiff's] arrest for a relatively minor matter," to "punch[] [Plaintiff] in the face *without* provocation." 570 F. App'x 21, 23 (2d Cir. 2014).

Like the officers in *Brown* and *O'Hara*, Noel and Murdocco would not be entitled to qualified immunity if a jury were to conclude that Noel and Murdocco pounced on Plaintiff (who was sitting peacefully on the bench in the waiting area and not resisting or attempting to flee), threw him into the wall, and struck him twice

with a baton in the course of arresting him for an imaginary violation.

Whether this happened is in dispute, and "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." *Kerman v. City of New York*, 261 F.3d 229, 240 (2d Cir. 2001). Therefore, the court finds that Noel and Murdocco are not entitled to qualified immunity on Plaintiff's excessive force claim at this time. Defendants may, of course, renew their immunity argument for all of Plaintiff's claims after trial, if necessary.

### IV.  CONCLUSION

For the reasons explained above Defendants' (Dkt. 31) motion for summary judgment is DENIED. The parties are DIRECTED to confer and contact the chambers of Magistrate Judge Sanket J. Bulsara to discuss next steps in the case.

SO ORDERED.

Dated:   Brooklyn, New York
         May 13, 2020

　　　　　　　　　　　　　　　　　　　　　　 /s/ Nicholas G. Garaufis
　　　　　　　　　　　　　　　　　　　　　　NICHOLAS G. GARAUFIS
　　　　　　　　　　　　　　　　　　　　　　United States District Judge